UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ALEJANDRO FIERRO MALDONADO,      )
Institutional ID No. 80969-280,      )
                                     )
                  Plaintiff,         )
                                     )
v.                                   )          CIVIL ACTION NO.
                                     )          5:13-CV-015-BG
GILES W. DALBY CORRECTIONAL          )          ECF
FACILITY, *et al.*,                  )
                                     )
                  Defendants.        )

## REPORT AND RECOMMENDATION

Federal prisoner Alejandro Fierro Maldonado filed this action *in forma pauperis* seeking

injunctive relief based on claims that he has not received adequate medical care during his

incarceration at Giles W. Dalby Correctional Facility (Dalby Facility). The district court transferred

this action to the undersigned magistrate judge, and the undersigned held a hearing pursuant to

*Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). The undersigned also obtained records

from Dalby Facility prior to and after the *Spears* hearing. Based on Maldonado's allegations and

testimony, records from Dalby Facility, and applicable law, the undersigned recommends that the

district court dismiss Maldonado's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.    Maldonado's Allegations

Maldonado alleges that the Defendants have shown deliberate indifference to his medical

needs. At the *Spears* hearing he claimed that he suffers from severe kidney problems, including a

tumor in his kidney; a physician at a hospital in El Paso, Texas, recommended that he see an

oncologist and urologist in August 2012; he was transferred to Dalby Facility in December 2012;

and medical staff at Dalby Facility have refused to provide him with adequate medical treatment and

have not referred him to a specialist for diagnosis and treatment of his kidney disease.  He testified

that he believes there is a tumor in one of his kidney and that he should be seen by an oncologist and

a urologist and should undergo a biopsy in order to obtain a correct diagnosis.

At the hearing Maldonado provided a summary of the events that led to the filing of this

action.  He testified that he first experienced problems with his kidneys in January 2012 when he

was detained at West Texas Detention Center in Sierra Blanca, Texas.  He specifically claimed that

he suffered from a kidney infection, fever, and severe kidney pain while there.  He further claimed

that he began noticing blood in his urine in August 12, 2012.

Maldonado claimed that he was transferred from Sierra Blanca to El Paso, Texas, on

August 23, 2012, for a court appearance before United States District Judge Frank Montalvo.

He claims that he explained his problems to Judge Montalvo and that Judge Montalvo ordered that

he be taken to a hospital for testing.  Maldonado testified that he was transferred to a hospital in

El Paso the same day pursuant to Judge Montalvo's order and that he underwent a blood test,

urinalysis, and an MRI at the hospital.  Maldonado further testified that the results of the tests

showed serious pathology and that the examining doctor told him that he needed to see an oncologist

and urologist.  As of the date of the hearing, however, he had not been examined by a specialist.

Maldonado testified that he was transferred from El Paso to a prison in Alamogordo, New Mexico,

and then to Dalby Facility in December 2012.  He claimed that his medical records and, specifically,

the records from the El Paso hospital were not transferred to Dalby Facility, and he contends those

records show that he needs to be examined by a specialist in oncology and urology.  He testified that

he told P. Hanford, D.O., a physician at Dalby Facility, that he needed to see a specialist, and

Dr. Hanford told him that he did not have Maldonado's medical records but would request them.

2

Maldonado acknowledged at the hearing that he has undergone examinations, testing, and an abdominal scan at Dalby Facility and that Dr. Hanford has prescribed medications for him there; however, he claimed that he believes he is now immune to medications, the tumor in his kidney is inflamed, and he suffers from fever and pain.

## II.   Authenticated Records

Dalby Facility provided authenticated records prior to the *Spears* hearing.  The records show, as Maldonado testified, that he was transferred to Dalby Facility in December 2012.  According to the records, Dr. Hanford examined Maldonado on December 17, 2012, and recommended a continuation of prescriptions that physicians had prescribed for him prior to his transfer, including prescriptions for Zantac, ibuprofen, Flexeril, and a diuretic.  Dr. Hanford also prescribed lisinopril, a medication for hypertension.  Dr. Hanford examined Maldonado again nine days later and noted that Maldonado suffered from hypertension, obesity, and abdominal pain.  He requested medical records, including results from tests that Maldonado underwent prior to his transfer to Dalby Facility. Dr. Hanford discontinued Flexeril, prescribed a laxative, and requested that Maldonado be assigned to a lower bunk.  On that day Maldonado signed an authorization for release of his medical records.

One week later Maldonado underwent a blood count test, lipid panel test, hemoglobin panel test, and a metabolic panel test at Dalby Facility.  Although Maldonado's white blood cell count was above average, it was listed as 0.5 as compared with the normal range of 0.0 to 0.4.  The results of the tests were otherwise normal.  Thereafter, on January 17, 2013, Maldonado underwent a urinalysis and another blood test with normal results.  He filed this action six days later on January 23, 2013.  On that date Dr. Hanford examined Maldonado for complaints of abdominal pain and

reported no masses, no rebound, and mild tenderness in Maldonado's right lateral abdomen. Dr. Hanford prescribed a laxative, requested a diet that did not include spicy foods, recommended that Maldonado drink more water, and ordered an abdominal scan. The results of the scan were returned on January 31, 2013, and showed no abnormalities.

Dalby Facility provided records after the *Spears* hearing. The acting warden of Dalby Facility attached a letter to the records informing the court that the records are true and correct copies of original records Dalby Facility received from the prison in New Mexico. The records show that Maldonado was examined in the emergency room at University Medical Center El Paso upon Judge Montalvo's orders. These records show that Maldonado was given patient education materials for non-specific abdominal pain at the time of his discharge from the hospital. Other discharge documents show a diagnosis of "no acute pathology" and that his medications remained the same as they were when he was admitted: he was to continue taking Flexeril, a diuretic, medication for hypertension, and Zantac. Records generated after his discharge from the hospital show that Maldonado underwent a number of urinalyses and that the results of all tests were within normal limits with no showing of blood in his urine.

## III.   Discussion

An inmate incarcerated at a private prison such as Dalby Facility may seek remedial action in federal court via an action for injunctive relief. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) (acknowledging that remedial action through grievances and suits for injunctive relief were available to the prisoner-plaintiffs who were incarcerated at a private prison). Injunctive relief, where appropriate, is entered as a "means for preventing entities from acting unconstitutionally." *Id.* Thus, an inmate such as Maldonado who seeks injunctive relief

must show that the defendants are acting unconstitutionally. *See id.* Maldonado has not done so.

The Eighth Amendment to the United States Constitution requires prison officials to provide prisoners with adequate medical care during incarceration. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Thus, failure to provide medical care may amount to a violation of a prisoner's constitutional rights; however, constitutional concerns are implicated only when the prisoner alleges acts or omissions sufficiently harmful to evidence deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prisoner can demonstrate that prison officials acted with deliberate indifference by showing that they "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citations and internal quotations omitted).

A critical component of a deliberate indifference claim is a showing that the defendants were subjectively aware that the prisoner was at risk of serious harm. *Easter*, 467 F.3d at 463. Put another way, there can be no finding of deliberate indifference unless the prison official knew of and disregarded an excessive risk to the prisoner's health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal citation and quotation omitted). Nothing from Maldonado's allegations or the authenticated records from Dalby Facility demonstrates subjective knowledge of a risk of serious harm to Maldonado on the part of anyone at Dalby Facility.

According to the authenticated records as summarized above, Dr. Hanford examined Maldonado at Dalby Facility at the time of Maldonado's transfer and again almost ten days later and entered orders to regulate Maldonado's prescriptions during the examinations.  He requested Maldonado's medical records from his prior prisons within the month Maldonado was transferred to Dalby Facility.  Significantly, he ordered a number of blood tests, a urinalysis, and an abdominal scan that produced results within the normal range.  In addition, with the exception of mild tenderness upon examination, Maldonado's abdomen was normal.  In short, nothing from the medical testing Maldonado has undergone at Dalby Facility suggests that he is in need of medical treatment beyond the medications prescribed for the hypertension, acid reflux, and constipation he experiences, and nothing in the records shows that he is at risk of substantial harm if he is not examined by an oncologist and a urologist.  In the absence of any medical evidence in Dr. Hanford's possession or in the possession of any other official at Dalby Facility that would suggest Maldonado is in need of examination and treatment by an oncologist and urologist, there can be no finding of subjective knowledge of a substantial risk of serious harm to Maldonado's health.

It should be noted that this is not a case in which treatment was denied for a well-documented medical condition such as was found in *Easter*, 467 F.3d 459.  In that case the plaintiff suffered from heart disease and had a history of heart attack, both of which were "well-documented" in his medical chart.  *Id*. at 463.  After the plaintiff presented at the prison clinic with complaints of severe chest pain and vomiting, a prison doctor prescribed oxygen and nitroglycerin with instructions that the plaintiff take nitroglycerin every five minutes as needed for chest pain and to call him if the plaintiff's chest pain was not relieved with the ingestion of three nitroglycerin tablets or after a period of fifteen minutes.  *Id*. at 461.  That day the plaintiff was given nitroglycerin, and

his pain ceased within approximately fifteen minutes. *Id*. Two days later the plaintiff returned to the clinic with complaints of severe chest pain. *Id*. The defendant, a nurse at the clinic, took his blood pressure and sent him to the prison pharmacy for nitroglycerin. *Id*. The pharmacy was closed, however, and the plaintiff returned to the clinic where he repeated his request for nitroglycerin. *Id*. After the defendant told the plaintiff that his blood pressure was normal and refused to provide any treatment, the plaintiff reminded the defendant that he was at the clinic for chest pain rather than for problems with blood pressure and requested an electrocardiogram. *Id*. The defendant refused to provide any treatment to the plaintiff, and security escorted the plaintiff to his cell where he suffered four hours of severe pain that ultimately led to bursting of blood vessels in his left eye. *Id*.

The defendant claimed that the plaintiff alleged only disagreement as to the appropriate treatment for his heart condition. *Id*. at 464. The Court of Appeals for the Fifth Circuit disagreed and characterized the issue as failure to follow a prescribed course of treatment and, specifically, failure to follow doctor's orders that called for the administration of nitroglycerin to address the plaintiff's chest pain. *Id*. The court noted that the nurse knew the plaintiff had a history of cardiac problems and yet ignored his complaints of severe chest pain and refused to provide any treatment whatsoever. *Id*. The court concluded that the nurse's awareness of the plaintiff's medical history coupled with her refusal to provide any treatment constituted deliberate indifference to a substantial risk of harm to the plaintiff. *Id*. at 463–64.

Such a situation is not present in this case. The case at hand is, in fact, a case involving a disagreement regarding appropriate medical treatment. Contrary to the facts in *Easter*, in this case, nothing in Maldonado's medical chart indicates that Maldonado suffers from a serious medical condition or that anyone at Dalby Facility has denied him prescribed treatment. To the contrary,

Maldonado has been provided prescription medication to address his documented medical conditions, and he has undergone repeated testing to monitor his conditions and to determine the cause of his abdominal pain.  What he has not been provided is an examination by an oncologist or urologist despite his request for such.  Based on the authenticated records in this case, however, Dr. Hanford has not found reason for such treatment, and his judgment is supported by the authenticated medical records.  Although Maldonado believes he suffers from severe kidney disease, a prisoner's mere disagreement with medical treatment does not constitute deliberate indifference to serious medical needs.  *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).  To the extent Maldonado believes medical staff at Dalby Facility are mistaken in their reading of the medical tests he has undergone, negligence or mistake in diagnosing or treating a medical condition does not rise to the level of an Eighth Amendment violation.  *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  To the extent Maldonado believes clinic staff at Dalby Facility have committed medical malpractice, his claim is not actionable under section 1983; state court rather than federal court is the proper forum for such a claim.  *Estelle*, 429 U.S. at 107.

Authenticated medical records showing examinations, diagnoses, and prescription medications may rebut a prisoner's allegations of deliberate indifference to serious medical needs.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).  The authenticated medical records in this case do just that.  Although the court is sympathetic to Maldonado's pain and his worries about his medical condition, he does not state a constitutional violation.

IV.   **Recommendation**

Based on the discussion in this Report and Recommendation, the undersigned recommends that the district court dismiss Maldonado's Complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).  Dismissal is required under § 1915(e)(2)(B) because Maldonado was permitted to bring this action *in forma pauperis*, and his Complaint is frivolous.  *See id.*  (requiring dismissal of a complaint brought *in forma pauperis* if the court determines that it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief).

The undersigned further recommends that any pending motions be denied as moot and that this dismissal be considered a "strike" for purposes of 28 U.S.C. § 1915(g).  *See Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996) (setting forth the standard for assessing strikes under the Prison Litigation Reform Act).

V.   **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      Dated:      July 23, 2013.

                                NANCY M. KOENIG
                                United States Magistrate Judge